IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


REBECCA JOHNSON,

                Plaintiff,

vs.                                   Case No. 15-1297-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff child's insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II.  History of case**

On March 28, 2014, administrative law judge (ALJ) Susan W. Conyers issued her decision (R. at 16-26). Plaintiff alleges that she had been disabled since March 1, 2006 (R. at 16). Plaintiff was born on December 9, 2003; she had not attained the age of 22 as of March 1, 2006, the alleged onset date (R. at

18).  At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 18).  At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 18).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 19).  After determining plaintiff's RFC (R. at 20), the ALJ found at step four that plaintiff has no past relevant work (R. at 25).  At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 25-26).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 26).

**III. Did the ALJ err in her evaluation of the opinions of Dr. Larson?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical

5

source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still

6

entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

As summarized in plaintiff's brief, Dr. Larson, a psychiatrist, treated plaintiff on October 11, 2013, October 25, 2013 and November 22, 2013. Dr. Larson then prepared a medical source statement-mental on her client on December 20, 2013 (Doc. 11 at 5; R. at 566-567). Dr. Larson found that plaintiff was markedly limited in her ability to work in coordination with or proximity to others without being distracted by them; in the ability to interact appropriately with the general public; in her ability to accept instructions and respond appropriately to

7

criticism from supervisors; and in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Dr. Larson also found that plaintiff was moderately limited in 4 other categories (R. at 566-567). The ALJ found that the opinions of Dr. Larson that plaintiff had marked limitations in social functioning was in conflict with the evidence. The ALJ noted evidence that plaintiff could get along with friends, treatment personnel and her father. The ALJ noted that certain persons are triggers for her anger, and then concluded that, based on this evidence, Dr. Larson's opinion can only be given partial weight (R. at 24).

    The ALJ gave great weight to two state agency assessments, by Dr. Watson and Dr. Cohen. On September 13, 2012, Dr. Watson opined that had a moderate limitation in her ability to get along with the public and with supervisors, and recommended that she work in settings that do not require frequent public contact or unusually close interaction with coworkers or supervisors (R. at 86-87). On November 29, 2012, Dr. Cohen made the same recommendations (R. at 114). Although the ALJ gave great weight to their opinions, the ALJ noted that there are additional limitations of no public contact, and that plaintiff has moderate limitations in concentration, persistence and pace (R. at 24).

In the ALJ's mental RFC findings, the ALJ concluded that plaintiff can perform simple and routine tasks consistent with unskilled work involving no interaction with the general public, and no more than occasional interaction with coworkers and supervisors, with relatively few changes in the workplace and little or no independent planning or goal setting.  The ALJ noted that plaintiff would work better with data and things than with people (R. at 20).

When the ALJ evaluated plaintiff's mental impairments at step two, the ALJ found that plaintiff had moderate to marked difficulties in social functioning.  The ALJ noted that although she suffers from irritability and anger, she can socialize with friends on occasion, and can engage in activities in the community such as applying for jobs in person.  The ALJ also noted that plaintiff participates in group sessions and can engage in outings with others (R. at 19).

Plaintiff's argues that the ALJ's finding at step two that plaintiff had moderate to marked difficulties in social functioning conflicts with the ALJ's finding that the opinions of Dr. Larson that plaintiff has marked limitations in social functioning is in conflict with the evidence.  On the facts of this case, the court finds no clear conflict in these findings by the ALJ which would necessitate remand of this case.

According to 20 C.F.R. § 404.1520a(c)(3,4), the Commissioner rates a claimant's mental limitations in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  In the first three functional areas a five point-scale is used: none, mild, moderate, marked, and extreme.  In the fourth functional area, a four-point scale is used: none, one or two, three, four or more.  If the degree of limitation in the first three categories is none or mild, and none in the fourth category, the Commissioner will generally conclude that the mental impairment is nonsevere.  20 C.F.R. § 404.1520a(d)(1).

The psychiatric review technique findings described in 20 C.F.R. § 404.1520a are not an RFC assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories set out in 20 C.F.R. § 404.1520a.  SSR 96-8p, 1996 WL 374184 at *4.  In assessing RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe."  While a "not severe" impairment standing alone may not significantly limit an individual's ability to do basic work

activities, it may, when considered with limitations or restrictions due to other impairments, be critical to the outcome of a claim. SSR 96-8p, 1996 WL 374184 at *5.

The ALJ found that Dr. Larson's finding of marked limitations in social functioning was in conflict with the evidence. First, it should be noted that at step two, the ALJ found "moderate to marked" difficulties in social functioning; the ALJ did not find "marked" difficulties in social functioning. Second, although the ALJ found at step two that plaintiff had a moderate to marked difficulties in social functioning, the mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories set out in step two. In her mental RFC evaluation, Dr. Larson opined that plaintiff had a marked limitation in 3 categories, a moderate limitation in 1 category, and was not significantly limited in 1 category.

Third, in rejecting Dr. Larson's opinions of marked limitation in social functioning at step four, the ALJ gave greater weight to the opinions of Dr. Watson and Dr. Cohen, who opined that plaintiff had only moderate limitations in plaintiff's ability to get along with the general public and with supervisors. Furthermore, the ALJ, although she gave greater weight to the opinions of Dr. Watson and Dr. Cohen,

11

found an additional limitation of no public contact.  Thus, the ALJ rendered an RFC finding with greater limitations than those found by Dr. Watson and Dr. Cohen, but with limitations not as great as set forth by Dr. Larson.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  The court can only review the sufficiency of the evidence.  Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo.  Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The court finds no clear error in the ALJ's evaluation of the medical opinion evidence; the court will not reweigh the evidence.  Furthermore, when the ALJ is faced with conflicting medical opinions, and adopts a middle ground, arriving at an

12

assessment between the two medical opinions without fully embracing either one, such an approach has been upheld and found not to be error.  <u>Smith v. Colvin</u>, 821 F.3d 1264, 1268 (10th Cir. 2016).

In summary, the court finds no clear conflict with the ALJ's step two finding of moderate to marked difficulties in social functioning, and the ALJ's rejection of Dr. Larson's opinions at step four that plaintiff had marked limitations in three of the five categories of social interaction.  The ALJ made RFC findings at step four which gave greater weight to the opinions of Dr. Watson and Dr. Cohen, but gave some weight to the opinions of Dr. Larson.  The court finds that substantial evidence supports the decision of the ALJ to adopt a middle ground between the medical opinions, arriving at an RFC assessment between the medical opinions, without embracing one or more of them in particular.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 9th day of November 2016, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge